UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BANCORPSOUTH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:16-cv-01871-SEB-DML |
| | ) | |
| FEDERAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION TO DISMISS**

This is an insurance case. Before us is Defendant Federal Insurance Company's ("Federal") Motion to Dismiss for failure to state a claim upon which relief can be granted filed pursuant to Federal Rule of Civil Procedure 12(b)(6). [Dkt. No. 17.] Plaintiff has responded in opposition. For the following reasons, we GRANT the Motion.

**Facts**

BancorpSouth, Inc. ("Bancorp") is a financial institution which provides, among other things, checking and savings accounts to individuals. Bancorp purchased a bankers' professional liability insurance policy from Federal with a policy period of November 15, 2009 to November 15, 2010 (the "Policy"), a copy of which is attached as Exhibit 1 to the Complaint. The Policy obligates Federal to provide insurance coverage as follows:

1. INSURING CLAUSE

The Company [Federal] shall pay, on behalf of an **Insured, Loss**[1] on account of any **Claim** first made against such **Insured** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act**[2] committed by an **Insured** or any person for whose acts the **Insured** is legally liable while performing **Professional Services**,[3] including failure to perform **Professional Services**.

The Policy contains various exclusions, including the following:

3. EXCLUSIONS

The Company shall not be liable for Loss on account of any Claim:

. . .

    n. based upon, arising from, or in consequence of any fees or charges;

    . . . .

[Policy § 2 ("Exclusion 3(n)").]

---

[1] "Loss" is defined by the Policy as: "the amount that an **Insured** becomes legally obligated to pay on account of any covered **Claim,** including but not limited to damages (including punitive or exemplary damages if and to the extent that such punitive or exemplary damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages provided such jurisdiction has a substantial relationship to the relevant **Insured,** to the Company, or to the **Claim** giving rise to the damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**." The Policy excludes certain items from the definition of "Loss," however, those exclusions are not relevant here.

[2] The Policy defines "Wrongful Act" as any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted, before or during the Policy Period by any Insured or any person for whose acts the Insured is legally liable.

[3] Professional Services is defined by the Policy as "those services, including Loan Servicing, performed or required to be performed by an Insured for or on behalf of a Customer:
    a. for a fee, commission or other monetary consideration;
    b. where a fee, commission or other monetary consideration would usually be received by the Insured but for business or other reasons is waived by the Insured; or
    c. for other remuneration which inures to the benefit of such Insured."

2

On May 18, 2010, Shane Swift filed a class action lawsuit on behalf of himself and others against Bancorp in the Northern District of Florida, case number 1:10-cv-90-SPM-AK ("Swift Complaint" or "Swift Lawsuit").[4]

The Swift Complaint's opening allegation states:

> 1.   This is a civil action seeking monetary damages, restitution, and declaratory relief from Defendant, [BancorpSouth], arising from its unfair and unconscionable assessment and collection of excessive overdraft fees.

[Swift Compl. ¶ 1.][5] The Swift Complaint alleges that Bancorp maximized its overdraft fees to its customers by: (1) "reorder[ing] the debits from largest to smallest" in an effort to maximize overdraft fees [*id*. ¶ 30]; (2) provid[ing] "inaccurate balance information to customers" through its electronic banking programs by reporting a positive balance despite its knowledge that outstanding transactions would result in a negative balance, as well as placing holds on certain funds which caused negative balances and overdraft fees [*id*. ¶ 44]; (3) failing to notify customers when their transactions would result in an overdraft fee and failing to inform customers of their option to opt-out of Bancorp's overdraft policy, thereby avoiding any overdraft charges [*id*. ¶¶ 48, 49]. These allegedly "wrongful overdraft

---

[4] The Swift Complaint was amended on June 21, 2010, but, according to Bancorp, contained "the same or substantially the same allegations as contained in the Initial Swift Complaint." [Compl. ¶ 33; Federal Mtn. 18 at 4-5 (Federal agrees).] Thereafter, the Swift Lawsuit was transferred to the Southern District of Florida, case number 1:09-md-02036-JLK, where it was made part of a multidistrict litigation that included similar lawsuits against other banks. [Compl. ¶ 34.] On December 6, 2010, Swift filed a Second Amended Complaint, which contains the same or substantially the same allegations as the Initial Swift Complaint and the Amended Swift Complaint. [Compl. ¶¶ 35-36; Federal Mtn. at 4-5.]

[5] Swift explained that overdraft fees have become a major profit center for banks, bringing in $37.1 billion in 2009 alone. [Swift Compl. ¶¶ 2-3.]

policies and practices" harmed him and others, examples of which charges were provided by Swift, some of which would have been avoided had Bancorp not reordered his transactions. [*Id.* ¶¶ 61-64, 69 ("Thus, as a consequence of BancorpSouth's overdraft policies and practices, Plaintiff and the [class members] have been wrongfully forced to pay overdraft fees.").]

Asserting claims for breach of contract, unconscionability, conversion, unjust enrichment, and violations of state statute [*id.* ¶¶ 73-108], Swift sought to represent a class of "[a]ll BancorpSouth customers in the United States who . . . incurred an overdraft fee as a result of BancorpSouth's practice of re-sequencing debit card transactions from highest to lowest" [*id.* ¶ 15]. Swift sought the following relief:

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

1. Declaring BancorpSouth's overdraft fee policies and practices to be wrongful, unfair and unconscionable;
2. Restitution of all overdraft fees paid to BancorpSouth by Plaintiff and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;
3. Disgorgement of the ill-gotten gains derived by BancorpSouth from its misconduct;
4. Actual damages in an amount according to proof;
5. Punitive and exemplary damages;
6. Pre-judgment interest at the maximum rate permitted by applicable law;
7. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and
8. Such other relief as this Court deems just and proper.

[*Id.* at 28-29.]

On or about February 24, 2016, Bancorp and Swift entered into a Settlement Agreement and Release ("Settlement Agreement") wherein Bancorp agreed to pay $24 million to the settlement class and up to $500,000 in administration fees to be used to administer the settlement. [Compl. ¶¶ 44-45.] The Settlement Agreement released claims to the extent that they involve, result in, or seek relief/recovery for "debit transaction sequencing or posting order", including the "handling of Debit Card Transaction", Bancorp's failure to notify or obtain advance approval when a transaction might cause an account to be overdrawn, failure to allow Settlement Class members to opt-out of overdrafts, failure to disclose posting order, debit re-sequencing, overdrafts or Overdraft Fees, and conduct encouraging the use of Bancorp debit cards. [*Id.* ¶ 43.] Bancorp also incurred attorneys' fees in defending and resolving the Swift Lawsuit. Although the parties did not supply us with a copy of the Settlement Agreement, Bancorp has excerpted relevant provisions in its Complaint. In any event, no one has argued that the Court's review of the entire Settlement Agreement is necessary to decide the merits of Federal's Motion to Dismiss.

Bancorp notified Federal of the Swift Lawsuit and demanded coverage for the claims pursuant to the terms of the Policy; Federal denied Bancorp's claim. [Compl. ¶¶ 38, 66.] As a result, Bancorp brings three claims against Federal in this lawsuit: (1) breach of contract, based on Federal's alleged failure to defend Bancorp in the Swift lawsuit [*id.* ¶¶ 67-72], breach of contract, based on Federal's alleged failure to indemnify Bancorp for

the settlement amount and attorneys' fees expended defending the litigation [*id.* ¶¶ 73-78], and breach of the duty of good faith and fair dealing, based on Federal's denial of coverage [*id.* ¶¶ 79-89]. Bancorp further seeks to recover its defense costs and the amount it paid to settle the Swift Lawsuit. Federal has moved to dismiss the Complaint based on the theory that the Policy does not provide coverage for Bancorp's Loss.

## Standard of Review

In the procedural context of a motion based on Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all well-pled factual allegations in the complaint and draw all ensuing inferences in favor of the non-movant. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). Nevertheless, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations must . . . raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted). The complaint must therefore include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2). Stated otherwise, a facially plausible complaint is one which permits "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Analysis

### Mississippi Insurance Governing Principles[6]

Under Mississippi law, an insurance policy is a contract, which the court must enforce in accordance with its provisions. *Noxubee County Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1166 (Miss. 2004). "Thus, insurance companies must be able to rely on their statements of coverage, exclusions, disclaimers, definitions, and other provisions, in order to receive the benefit of their bargain and to ensure that rates have been properly calculated." *Id.* "[W]hen stated without uncertainty or ambiguity, exclusionary language is binding upon the insured." *Progressive Gulf Ins. Co. v. We Care Day Care Ctr., Inc.*, 953 So. 2d 250, 254 (Miss. Ct. App. 2006). "The interpretation of an insurance policy is a question of law." *Porter v. Grand Casino of Miss., Inc.*, 181 So. 3d 980, 983 (Miss. 2016).

"[I]f a contract is clear and unambiguous, then it must be interpreted as written." *United States Fid. & Guar. Co. of Mississippi v. Martin*, 998 So. 2d 956, 963 (Miss. 2008). An ambiguity exists "when a policy can be logically interpreted in two or more ways, where one logical interpretation provides for coverage." *Architex Ass'n, Inc. v. Scottsdale Ins. Co.*, 27 So. 3d 1148, 1157 (Miss. 2010) (internal quotation omitted). "[A]mbiguous and unclear policy language must be resolved in favor of the non-drafting party—the insured. Further, provisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer." *Minnesota Life Ins. Co. v. Columbia*

---

[6] The parties agree that Mississippi law applies in resolving their dispute. [Federal Mtn. at 6-9; Bancorp Resp. at 4, n.3.]

*Cas. Co.*, 164 So. 3d 954, 967–68 (Miss. 2014) (citations and internal quotation omitted). Under Mississippi law, insurers bear the burden of proving exclusions apply. *Buente v. Allstate Ins. Co.*, 422 F. Supp. 2d 690, 696 (S.D. Miss. 2006) (citing *Commercial Union Ins. Co. v. Byrne,* 248 So. 2d 777 (Miss. 1971)).

### Applicability of Exclusion 3(n)

The resolution of the insurance coverage dispute before us turns on the nature of the claims alleged in the underlying Swift Lawsuit. The Policy provision at issue is Exclusion 3(n), which provides in relevant part: "The Company [Federal] shall not be liable for Loss on account of any Claim: . . . n. based upon, arising from, or in consequence of any fees or charges; . . . ." [Exclusion 3(n).] The term "arising out of"[7], as previously defined by the Mississippi Supreme Court, "require[s] a causal connection between the injuries alleged and the objects made subject to the phrase." *Ass'n Cas. Ins. Co. v. Major Mart, Inc.,* No. 1:2-cv-022-SA-DAS, 2013 WL 3409217, at *4 (N.D. Miss. July 8, 2013) (citing *Am. Guar. & Liab. Ins. Co. v. 1906 Co.*, 129 F.3d 941 (5th Cir. 1997) (citing *Roberts v. Grisham*, 487 So. 2d 836 (Miss. 1986)).[8]

---

[7] The relevant policy exclusion uses the term "arising from," as opposed to the phrase defined by Mississippi jurisprudence: "arising out of"; however, the parties do not contend that this distinction makes a difference to the applicability of controlling law or our resulting analysis. [Bancorp Resp. at 8; Federal Mtn. at 10, n.3.]

[8] Relying on a Fifth Circuit decision, Federal takes the position that "[a] claim need only bear an **incidental relationship** to the described conduct for the exclusion to apply." [Federal Mtn. at 10 (quoting *Archie v. Acceptance Indem. Ins. Co.*, 507 Fed. Appx. 451, 454 (5th Cir. 2013) (emphasis added).] Although the *Archie* case was a Fifth Circuit decision based on Mississippi law, its definition of the term "arising from" came from Texas and Missouri law, which are inapplicable here. 507 Fed. Appx. at 454 (citing *Scottsdale Ins. Co. v. Texas Sec. Concepts & Invest.*, 173 F.3d

Federal advances a single argument in support of its Motion to Dismiss, to wit, that the Policy excludes "Loss on account of any Claim . . . arising from . . . any fees", noting that Swift expressly alleged that his claims were "arising from [Bancorp's] unfair and unconscionable assessment and collection of excessive overdraft fees" [Swift Compl. ¶ 1]. Therefore, according to Federal, Exclusion 3(n) applies, thereby foreclosing coverage under the Policy for loss related to the Swift Lawsuit, and necessitating dismissal of the Complaint.

Bancorp interposes a two-pronged rejoinder. It contends that Federal has too narrowly construed the allegations in the Swift Lawsuit, while too broadly interpreting Exclusion 3(n). [Bancorp Resp. at 6.] The way Bancorp sees it, Swift alleged that the bank's *policies and procedures* caused the customers' alleged injuries, and overdraft fees were one type of damages suffered as a result. [*See, e.g.,* Swift Compl. at ¶ 84 ("Plaintiff and members of the National Class have sustained damages as a result of BancorpSouth's unconscionable policies and practices as alleged herein.").] Indeed, Swift alleged that some overdraft fees were acceptable and appropriate, says Bancorp, but it is the imposition of "too many fees that gave rise to the injury." [Bancorp. Resp. at 10.] According to Bancorp, because the alleged injuries claimed in the Swift Lawsuit were caused by

---

941 (5th Cir. 1999) (Miss.) (citing *Am. States Ins. Co. v. Bailey*, 133 F.3d 363 (5th Cir. 1998) (Tex.))); *see also Coleman v. Acceptance Indem. Ins. Co.*, No. 5:08cv260-DCB-JMR, 2009 WL 1873742, at *4 (S.D. Miss. June 29, 2009), *aff'd*, 369 Fed. Appx. 595 (5th Cir. 2010) (relying on *Scottsdale*, *supra*); *State Farm Mut. Auto. Ins. Co. v. White*, No. 1:15CV346-LG-RHW, 2016 WL 4702372, at *2 (S.D. Miss. Sept. 7, 2016) (relying on *Coleman*, *supra*).

Bancorp's policies and practices (and not overdraft fees), Exclusion 3(n) is inapplicable. Bancorp further argues that the Policy is illusory because it could be interpreted to include fees payable *by* Bancorp as well as those payable *to* Bancorp. [*Id.* at 7.] In that circumstance, says Bancorp, the exception should be construed in favor of Bancorp and applied only to fees paid by Bancorp (and not overdraft fees paid to Bancorp).

Neither the parties nor this court identified any controlling authority in which Exclusion 3(n) was applied in these circumstances. However, the parties do cite two unpublished circuit court cases in support of their respective positions. *See PNC Fin. Servs. Group, Inc.*, 647 Fed. Appx. 112 (3d Cir. 2016) (applying Texas law, relied upon by Federal); *First Comm. Bancshares v. St. Paul Mercury Ins. Co.*, 593 Fed. Appx. 286 (5th Cir. 2014) (applying Pennsylvania law, relied upon by Bancorp). The facts and legal issues in both cases are strikingly similar to those at issue here, though they ultimately reach opposite conclusions. Neither of these cases applies Mississippi law or is squarely on point with the case before us. They are, however, helpful to our analysis, though obviously not binding.

The Fifth Circuit, in *First Community Bancshares v. St. Paul Mercury Insurance Company*, held that the class action suit against the bank related, broadly speaking, to the bank's policies in claiming that excessive overdraft fees were one of the forms of resultant damages. 593 Fed. Appx. 286. In that case, the relevant insurance policy excluded claims "based upon, arising out of or attributable to any *dispute* involving fees or charges for an Insured's services." *Id.* at 288 (emphasis added). As in our case, the introductory

paragraph of the class action litigation in *First Community* described the class claims as "arising from [the bank's] unfair and unconscionable assessment and collection of excessive overdraft fees." *Id.* There the class alleged that the bank manipulated transactions to increase the amount of overdraft fees, contending that the bank's account statements and electronic balances "were incorrect, deceptive, and misleading, thus 'prevent[ing] customers from ascertaining the accurate balances in their accounts.'" *Id.* (alteration in original). The plaintiffs in the *First Community* class action sought disgorgement of fees, actual damages, restitution, and an injunction. *Id.*

The Fifth Circuit focused on the "factual allegations rather than the legal theories asserted," concluding that:

> While overdraft fees may have sometimes accompanied these alleged facts, this is not necessarily always the case. Instead, the primary harm stemming from these allegations is that customers could not ascertain their account balances and could not accurately plan spending, withdrawals, and deposits.
>
> Nor do these factual allegations necessarily bear a causal relationship to fees: charging of fees was not the practice that caused the harm, even if First Community's actions were motivated by a desire to obtain more fees. Instead, fees are an additional harm caused by the policies and practices of which the plaintiffs complain. Along these lines, the relief sought is not only the return of fees: the petitions also request actual damages and an "[o]rder enjoining [First Community] from continuing its overdraft policies and practices on the grounds that they are wrongful, unfair and unconscionable."

*Id.* at 289-90 (citations omitted).

The exclusionary provision in *First Community* is distinguishable from Exclusion 3(n) (as is true in the case upon which Federal relies). In *First Community*, the exclusion at issue in the insurance policy was a "fee-*dispute* exclusion", that is, those arising from

11

customer disagreements with respect to fees paid for services and not fees *in totem*. [Federal Reply at 4.] Federal contends that Exclusion 3(n) is "based upon, arising from, or in consequence of any fees or charges," which is a broader provision than the "fee-dispute" exclusion in *First Community*.

Plaintiffs in the underlying litigation in *First Community* sought damages resulting from inaccurate balances and the inability to accurately make financial decisions due to the bank's imposition of overdraft fees. In contrast, Swift's allegations specifically targeted Bancorp's overdraft fee charges (not a more generic harm, such as uncertainty or misinformation), defining the proposed class as individuals charged overdraft fees. Although Swift sought "actual damages" in his class action Complaint, as did the plaintiffs in *First Community*, he did not allege that "the primary harm stemming from these allegations [was] that customers could not ascertain their account balances and could not accurately plan spending, withdrawals, and deposits." The court in *First Community* described the underlying claim in this broader form. The gravamen of the Swift Lawsuit was the imposition of *fees* and, although those fees reflected Bancorp's allegedly dubious policies, Swift focused only on the fees incurred, by seeking the return of those fees.[9]

---

[9] Bancorp summarizes Swift's complaint as follows: "It is the policy and practice that allegedly led to the imposition of too many fees that gave rise to the injury." [Bancorp. Resp. at 10.] We have not ignored that Swift's Complaint includes a claim that he was wrongfully charged overdraft fees because Bancorp failed to notify him that he could be assessed an overdraft fee despite sufficient funds at the time of the transaction, and that it never notified him of insufficient funds to cover the charge, and that it paid, rather than returned, debit card charges when he had insufficient funds. [Swift Compl. ¶ 65.] In addition, the proposed class was defined as "[a]ll BancorpSouth customers in the United States who . . . incurred an overdraft fee as a result of BancorpSouth's practice of re-sequencing debit card transactions from highest to lowest". [*Id.*

Furthermore, the Swift Complaint did not request an injunction, only a declaratory judgment finding that Bancorp's policies and practices were unconscionable. For all of these reasons, the *First Community* decision is distinguishable from the issues before us.

Reaching the opposite conclusion than the Fifth Circuit did, the Third Circuit in *PNC* concluded that the insurance policy at issue excluded coverage for claims based on overdraft fees. 647 Fed. Appx. at 121. The PNC class actions[10] asserted three primary contentions: (1) although the bank could immediately determine whether the customer had sufficient funds to satisfy a transaction, PNC did not notify the customer, instead imposing an overdraft fee; (2) PNC manipulated the order in which it processed transactions to maximize overdraft fees; and (3) PNC failed to adequately advise customers of their option to stop the bank from processing transactions which caused the overdraft fees. *Id.* at 114. PNC settled some of the actions against it by creating a fund of $12 million to "refund" overdraft fees. *Id.* at 115. When PNC's insurers denied coverage for the loss incurred as a result of the class action settlements, they did so based on a policy exclusion for "fees, commissions or charges for **Professional Services** paid or payable to an Insured", arguing that the settled claims covered Professional Services fees, and therefore were excluded from coverage. *Id.*

---

¶ 15.] However, these allegations did not transform the Swift Lawsuit into a dispute over anything other than "fees."

[10] Six class action lawsuits were filed against PNC and National City Bank. Four were consolidated in the United States District Court for the Southern District of Florida as part of a multidistrict litigation and the remaining two actions proceeded in the court in which they were filed. *PNC*, 647 Fed. Appx. at 114.

13

PNC argued, unsuccessfully as it turns out, that the class's claims were broader than a dispute over improper fees. According to PNC, plaintiffs had sought damages for the *services* PNC provided that were objectionable, given that the class action sought not only restitution of fees, but also compensatory and punitive damages and injunctive relief. *Id.* at 120-21. The class members consisted of bank customers who had non-refunded overdraft fees and their respective payouts were determined based on the number of overdrafts they had incurred. *Id.* at 121. The Court concluded:

> Because the Professional Services Charge Exception unambiguously excludes from the definition of Damages third-party losses that constitute fees or charges for Professional Services paid to PNC and National City Bank [as well as those paid by the banks], and the *MDL* and *Trombley* settlement payments in fact refunded overdraft fees, we conclude, as did the District Court, "that there is no other way for the Court to construe the [Professional Services Charge] Exception than to encompass the settlements at issue here."

*Id.* (granting in part and denying in part cross-motions for judgment on the pleadings).

We find the analysis in *PNC* to be persuasive here. Exclusion 3(n) unambiguously excludes from coverage loss(es) arising from fees. Loss(es) arising from overdraft fees are precisely the harm alleged in the Swift Lawsuit. Therefore, such damages are excluded from coverage pursuant to Exclusion 3(n). To paraphrase the *PNC* decision: there is no other way for us to construe Exclusion 3(n) than to encompass the claims at issue here. *See PNC*, 647 Fed. Appx. at 121.

Bancorp's attempt to identify an ambiguity in the Policy does not carry the day in terms of resolving this dispute. Bancorp argues that because Exclusion 3(n) does not distinguish between fees and charges *payable to* Bancorp from fees and charges *payable*

14

*by* Bancorp, the exclusion is ambiguous and must therefore be construed in favor of coverage. "Although ambiguities in an insurance policy should be construed against the insurer, court cannot alter or change contract where terms are not ambiguous, despite resulting hardship on the insured." *State Farm Mut. Auto. Ins. Co. v. Scitzs,* 394 So. 2d 1371, 1373 (Miss.1981) (citing *Titan Indem. Co. v. Estes*, 825 So.2d 651, 656 (Miss. 2002)). Thus, Exclusion 3(n) is not rendered ambiguous simply because it is broad, nor does a broad exclusion necessarily result in illusory coverage.[11]

Bancorp's argument assumes that Exclusion 3(n) refers only to fees payable by Bancorp *or* fees payable to Bancorp, but not both. In advancing this claim, Bancorp ignores the plain language of Exclusion 3(n), which does not distinguish between fees payable to or payable by Bancorp and thus unambiguously encompasses both. Simply stated, Bancorp equates breadth to ambiguity. *See, e.g.*, *Farmers Ins. Exch. v. Smith*, 757 N.E.2d 145, 150 (Ind. Ct. App. 2001) (Insured argued that a policy exclusion was ambiguous because it was unclear to which "person" the exclusion applied. The court concluded that the exclusion applied to all possible persons, stating that the plaintiffs "confused the breadth of the

---

[11] In a footnote, Bancorp attempts to connect its ambiguity argument to a conclusion that the Policy's coverage is illusory. According to Bancorp "Professional Services" is defined by the Policy as services performed for a customer for a *fee* and by defining the exclusion in terms of fees paid by and to Bancorp, no coverage would apply. [Bancorp Resp. at 16, n. 10.] This argument is unavailing. Without setting forth a list of claims that the Policy would cover, Federal explains that certain claims can arise based on "Professional Services" as opposed to fees charged, which would be covered under the Policy. [*See* Federal Reply at 9.] For example, claims involving the *quality* of a service (which was provided for a fee) would not be subject to the exclusion for loss related to fees. We agree with this analysis.

15

exclusion for ambiguity" and that the broad language of the exclusion was written to apply to each possible "person" at issue.). Our responsibility is to apply the unambiguous exclusion as set forth in the contract to which both parties initially agreed.[12]

Bancorp's damages arose from improper overdraft charges and the fees that depositors incurred. As such, they are excluded from coverage under the Policy. [*See* Exclusion 3(n); *Ass'n Cas. Ins. Co.*, 2013 WL 3409217, at *4 (citing *Am. Guar. & Liab. Ins. Co.*, 129 F.3d 941.] It was their assessment of the overdraft fees that caused the Swift plaintiffs harm, and the relief they successfully achieved came in the form of a return of those fees. Accordingly, Counts I and II of the Complaint must be dismissed.

We shall also dismiss Count III in light of Mississippi law which requires that a plaintiff must first establish coverage for the underlying claim in order to recover on a claim of bad faith. *Stubbs v. Mississippi Farm Bureau Cas. Ins. Co.*, 825 So. 2d 8, 13 (Miss. 2002) ("An insured seeking to recover on a claim of bad faith must first establish

---

[12] Bancorp offers another undeveloped argument by urging us to parse Swift's multiple claims and "at a minimum . . . determine whether each of the claims asserted against BancorpSouth fits the contours of Exclusion 3.n." [Bancorp Resp. at 18-19.] Bancorp points to the definition of "allocation" in the Policy to urge us to "allocate the total amount of Loss 'between covered Loss and noncovered loss.'" [*Id.* at 18.] Bancorp fails to identify which of Swift's claims are not impacted by Exclusion 3(n) or to explain the manner in which Loss should be allocated. It is not the court's role to advance arguments on behalf of the parties. *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) ("[I]t is not this court's responsibility to research and construct the parties' arguments." (citing *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000)); *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We have repeatedly made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).")). Bancorp's failure to develop and support its argument, constitutes a waiver of it.

the existence of coverage on the underlying claim.") (citations omitted). Having failed in that effort, Bancorp's claim for bad faith must also be dismissed.

## Conclusion

For the foregoing reasons, we DISMISS WITH PREJUDICE Bancorp's Complaint, in its entirety. Judgment shall enter accordingly.


Date: __1/26/2017__

_SARAH EVANS BARKER, JUDGE_
United States District Court
Southern District of Indiana


Distribution:

Andrew A. Stulce
HUNTON & WILLIAMS LLP
astulce@hunton.com

Jennifer E. White
HUNTON & WILLIAMS LLP
jewhite@hunton.com

Michael S. Levine
HUNTON & WILLIAMS LLP
mlevine@hunton.com

Lawrence J. Bracken, II.
HUNTON & WILLIAMS LLP
lbracken@hunton.com

Christina Laun Fugate
ICE MILLER LLP
christina.fugate@icemiller.com

Christopher A. Wadley
WALKER WILCOX MATOUSEK LLP
cwadley@wwmlawyers.com

Edward P. Gibbons
WALKER WILCOX MATOUSEK LLP
egibbons@wwmlawyers.com